# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal No. 20- 800 (RBK) |
| | : | |
| v. | : | 18 U.S.C. §§ 1349, 371, 1001, 1956, 1957, 2 |
| | : | |
| CHRISTOPHER KYLE JOHNSTON, | : | <u>INDICTMENT</u> |
| TRENT BROCKMEIER, and | : | |
| CHRISTOPHER CASSERI | : | |

The Grand Jury in and for the District of New Jersey, sitting in Camden, charges:

## COUNT 1
### (Conspiracy to Commit Health Care Fraud and Wire Fraud)

1.      At all times relevant to this Indictment:

a.      Central Rexall Drugs, Inc. ("Central Rexall") was a pharmacy located in Hammond, Louisiana, that made compounded medications.  Before 2013, Central Rexall was primarily a retail pharmacy servicing local customers.

b.      Defendant CHRISTOPHER KYLE JOHNSTON was the controlling member and President of Pharmacy Management Group, LLC, and Bluen Medical, LLC, and in 2014 and 2015 was General Counsel of Central Rexall.

c.      Defendant TRENT BROCKMEIER was the Chief Operating Officer of Central Rexall, a member of Pharmacy Management Group, LLC, and Bluen Medical, LLC, and the Chief Executive Officer of Bluen Medical, LLC.

d.      Defendant CHRISTOPHER CASSERI was the Vice President of Sales for Central Rexall.

e.      Hayley Taff was the Chief Executive Officer of Central Rexall and a minority owner of Central Rexall.

f.      Individual 1 was the majority owner of Central Rexall.

1

g.      William Hickman was a New Jersey distributor for Central Rexall.

h.      Pharmacy Management Group, LLC ("PMG") was a Delaware limited liability company.  Defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER and Individual 2 were the members of PMG.

i.      Bluen Medical, LLC ("Bluen Medical") was a Delaware limited liability company.  Defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER were the members of Bluen Medical.

2.      In general, compounding was a practice in which a licensed pharmacist combined, mixed, or altered ingredients of one or more drugs in response to a prescription to create a medication specifically tailored to the individual medical needs of an individual patient.

3.      In part because they are supposed to be specifically tailored to individual medical needs rather than mass produced, compounded drugs are not approved by the United States Food and Drug Administration ("FDA").  This means that the FDA does not verify the safety, effectiveness, or quality of compounded drugs.

4.      Compounded drugs could be appropriately prescribed by a physician when an FDA-approved medication did not meet the health needs of a particular patient.  A drug may be compounded for a patient who cannot be treated with an FDA-approved medication, such as a patient who has an allergy to a certain dye and needs a medication to be made without it, or an elderly patient or a child who cannot swallow a tablet or capsule and needs a medicine in a liquid dosage form.

5.      In New Jersey, the State Health Benefits Program ("SHBP") offered medical and prescription drug coverage to qualified state and local government public employees, retirees, and eligible dependents.  The School Employees' Health Benefits Program ("SEHBP") offered

medical and prescription drug coverage to qualified local education public employees, retirees, and eligible dependents. SHBP and SEHBP each were "health care benefit programs" that affected commerce as defined in 18 U.S.C. § 24(b).

6.     TRICARE was a federally funded health care program of the United States Department of Defense ("DOD") that provided drug insurance coverage for DOD beneficiaries worldwide, including active duty service members, National Guard and reserve members, retirees, their families, and survivors. TRICARE was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

7.     Pharmacy Benefits Administrator provided pharmacy benefit management services for SHBP and SEHBP beneficiaries pursuant to a contract with the State of New Jersey. Pharmacy Benefits Administrator also provided pharmacy benefit management services for TRICARE beneficiaries and beneficiaries of other insurance plans. Pharmacy Benefits Administrator adjudicated claims for reimbursement from pharmacies and paid pharmacies for valid claims. Pharmacy Benefits Administrator billed the State of New Jersey based on the amount paid to pharmacies for claims on behalf of SHBP and SEHBP beneficiaries and billed TRICARE and other insurance plans based on the amounts paid to pharmacies on claims on behalf of their beneficiaries. Pharmacy Benefits Administrator was a "health care benefit program" that affected commerce as defined in 18 U.S.C. § 24(b).

8.     Central Rexall had an agreement with Pharmacy Benefits Administrator signed by defendant TRENT BROCKMEIER that specified the terms under which Pharmacy Benefits Administrator would pay Central Rexall for legitimate prescriptions filled by Central Rexall for beneficiaries of insurance plans administered by Pharmacy Benefits Administrator. As part of

that agreement, Central Rexall agreed to collect and not waive or discount copayments from

beneficiaries of insurance plans administered by Pharmacy Benefits Administrator.

9.      Under its agreement with Pharmacy Benefits Administrator, Central Rexall could

submit claims only for actual valid prescriptions signed or properly authorized by a doctor or

other qualified medical professional.

10.      Central Rexall received prescriptions for compounded medications via fax from

medical offices in New Jersey and other states.

11.      Once Central Rexall received a prescription from a medical office for a

compounded medication, Central Rexall employees prepared and submitted an electronic claim

to Pharmacy Benefits Administrator using information from the prescription, including the

patient's name, address and identifying information, date of birth, insurance information, the

ingredients contained in the compounded medication on the prescription, and the name and

identifying information of the doctor or qualified medical professional who signed the

prescription.

12.      Central Rexall submitted the electronic claims by interstate wire communications

from Louisiana to Pharmacy Benefits Administrator, and Pharmacy Benefits Administrator

responded electronically with an interstate wire communication stating the adjudication of the

claim, that is, whether the claim was covered and the amount that would be paid for the claim.

13.     From in or about July 2013 through in or about December 2016, in the District of New Jersey, and elsewhere, defendants

CHRISTOPHER KYLE JOHNSTON,
TRENT BROCKMEIER, and
CHRISTOPHER CASSERI

did knowingly and intentionally conspire and agree with each other and with Hayley Taff and William Hickman and others to commit certain offenses, namely:

a.      To knowingly and willfully to execute a scheme and artifice to defraud a health care benefit program and to obtain, by means of false and fraudulent pretenses, representations, and promises, money and property owned by, or under the custody and control of, a health care benefit program in connection with the delivery of and payment for health care benefits, items, and services, contrary to Title 18, United States Code, Section 1347; and

b.      To devise a scheme and artifice to defraud, and to obtain money and property by means of materially false pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate commerce, writings, signs, signals, and sounds, contrary to Title 18, United States Code, Section 1343.

## Object of the Conspiracy

14.     It was the object of the conspiracy for defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI and Hayley Taff and William Hickman and others to unlawfully enrich themselves by causing the submission of false and fraudulent insurance claims to Pharmacy Benefits Administrator for medically unnecessary

Central Rexall compounded prescription medications and by sharing in the profits realized by Central Rexall from payments for those compounded prescription medications.

## Manner and Means of the Conspiracy

15.     It was part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI learned that certain insurance plans, including TRICARE, SHBP, and SEHBP, would reimburse thousands of dollars for one individual's one-month supply of certain prescription compounded medications, including compounded vitamin combinations, pain creams, scar creams, and antifungal creams.

16.     It was further part of the conspiracy that in 2013, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER approached Taff and Individual 1 with a proposal to take over the management of Central Rexall and expand Central Rexall's operations to market compounded medications nationwide.

17.     It was further part of the conspiracy that, at the request of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER, on or about July 15, 2013, Central Rexall entered into an agreement with PMG under which PMG would provide management services to Central Rexall and receive 90% of Central Rexall's net profits.

18.     It was further part of the conspiracy that, at the request of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER, in or about 2014, Central Rexall entered into agreements with Bluen Medical under which Bluen Medical would provide management services to Central Rexall and receive 90% of Central Rexall's net profits, with defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER deciding how to allocate the 90% between PMG and Bluen.

19.     It was further part of the conspiracy that the effect of these agreements with PMG and Bluen Medical was to give defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER power to manage the operations of Central Rexall, and they exercised that power, with defendant CHRISTOPHER KYLE JOHNSTON becoming General Counsel and defendant TRENT BROCKMEIER becoming Chief Operating Officer.

20.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER brought to Central Rexall formulas for compounded medications that they knew would each adjudicate for thousands of dollars per month and would cost only a small fraction of that amount to make.

21.     It was further part of the conspiracy that at the direction of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER, Central Rexall used preprinted prescription pads with their formulas for compounded medications.

22.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER entered into agreements with distributors under which the distributors agreed to market Central Rexall compounded medications in exchange for percentages up to and including 50% of the insurance adjudications for the medications.

23.     It was further part of the conspiracy that, on the authority of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER, Central Rexall hired defendant CHRISTOPHER CASSERI as Vice President of Sales to manage Central Rexall's distributors, with pay that included performance bonuses.

24.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI designed combinations of ingredients for compounded medications based on the combinations' high insurance

reimbursements and manipulated the ingredients to obtain the highest possible insurance reimbursement rather than to serve the medical needs of patients.

25.    It was further part of the conspiracy that in order to determine the insurance adjudication for a potential new combination of ingredients for which they did not have an actual prescription, defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI caused Central Rexall employees and contractors to submit to Pharmacy Benefits Administrator false test claims ("test adjudications"), which were false and fraudulent because the test adjudications necessarily represented that Central Rexall had received a valid prescription from a doctor or other qualified medical professional for the patient identified in the claim to receive a prescribed compounded medication containing the specified combination of ingredients, when in fact there was no such prescription.

26.    It was further part of the conspiracy that the test adjudications used the identifying information, including patient names, dates of birth, and insurance information, from prescriptions Central Rexall had previously received for other compounded medications, but without the knowledge or consent of the individuals whose identifying information was used.

27.    It was further part of the conspiracy that once Pharmacy Benefits Administrator responded that the combination of ingredients in the test adjudication was covered and the amount of the insurance adjudication, Central Rexall employees would print the results, inform defendant CHRISTOPHER CASSERI or defendant TRENT BROCKMEIER, promptly send an electronic communication to Pharmacy Benefits Administrator reversing the claim, and shred the paper record of the test adjudication.

28.    It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI used the information

8

from these test adjudications to design compounded medications based on the amount of money that insurance would pay for the compounded medications rather than on the medications' ability to help patients.

29. It was further part of the conspiracy that under the direction of defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI, Central Rexall placed compound medication combinations on its prescription pads and sent compounded medications to patients based on the amount of money that insurance would pay for a particular combination of ingredients, without doing any tests, studies, or research into the medical necessity or effectiveness of the particular combination of ingredients, without sending information to patients or their health care providers about the medical necessity or effectiveness of the particular combination of ingredients, and without disclosing to patients or their health care providers that the combination of ingredients was selected to maximize the insurance reimbursement rather than serve the medical needs of the patients.

30. It was further part of the conspiracy that when Pharmacy Benefits Administrator stopped covering one combination of ingredients, at the direction of defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI, Central Rexall developed a different combination of ingredients based on the amount that insurance would pay for that combination rather than the medical necessity or effectiveness of the new combination of ingredients, and Central Rexall then sent medications containing that new combination of ingredients to patients, even though the new combination of ingredients was not medically equivalent to the combination of ingredients originally prescribed for the patient, and without explaining the differences to patients or prescribing health care providers or informing them that Central Rexall chose the combination based on the insurance reimbursement.

31.     It was further part of the conspiracy that because SHBP and SEHBP covered

certain compounded medications until 2016, Central Rexall shipped a large percentage of its

compounded medications to SHBP and SEHBP beneficiaries in New Jersey.

32.     It was further part of the conspiracy that, at the direction of defendants

CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER, and to encourage patients to

continue to receive medications they did not need, Central Rexall continued shipping

compounded medications to patients without requiring patients to pay copayments, despite the

requirement in Central Rexall's agreement with Pharmacy Benefits Administrator that Central

Rexall collect copayments from patients.

33.     It was further part of the conspiracy that Central Rexall distributors retained and

directed by defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and

CHRISTOPHER CASSERI marketed medications directly to individual patients and

beneficiaries of insurance plans administered by Pharmacy Benefits Administrator, even though

Central Rexall's agreement with Pharmacy Benefits Administrator prohibited such marketing.

34.     It was further part of the conspiracy that Central Rexall distributors retained and

directed by defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and

CHRISTOPHER CASSERI obtained prescriptions that were not medically necessary and

fraudulent, including (a) prescriptions for patients who had not been examined by a doctor or

other medical professional, (b) prescriptions signed or authorized by doctors and medical

professionals without a determination that the medication was medically necessary, (c)

prescriptions signed or authorized by doctors and medical professionals who were paid

kickbacks, (d) prescriptions for 12 months of refills that were not medically necessary and that a

patient could not reasonably use in 12 months, (e) prescriptions for medications that patients had

not agreed to receive, and (f) prescriptions for patients who agreed to receive the medications because they were paid or received other benefits to do so.

35.     It was further part of the conspiracy that at the direction of defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI, Central Rexall promoted Central Rexall compounded medications as prescription treatments for medical conditions and weight loss without tests or studies to support the claims that the particular combinations of ingredients in the compounded medications were effective in treating those conditions or causing weight loss.

36.     It was further part of the conspiracy that Central Rexall marketing materials and communications with patients falsely represented that Central Rexall compounded medications were custom designed to suit the medical needs of individual patients, when in reality the formulas for Central Rexall medications were developed by defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI and by Central Rexall distributors to maximize profits and were not tailored to individual patients.

37.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI and others caused the submission of numerous false and fraudulent claims to Pharmacy Benefits Administrator and others for compounded medications.

38.     It was further part of the conspiracy that defendant CHRISTOPHER KYLE JOHNSTON received over $34,000,000 from Central Rexall from 2014 through 2016.

39.     It was further part of the conspiracy that defendant TRENT BROCKMEIER received over $5,000,000 from Central Rexall from 2014 through 2016.

40.     It was further part of the conspiracy that defendant CHRISTOPHER CASSERI received bonuses of approximately $100,000 in 2015 and in 2016.

41.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI and others caused Pharmacy Benefits Administrator to pay over $50,000,000 for false and fraudulent claims for compounded medications.

In violation of Title 18, United States Code, Section 1349.

## COUNT 2
**(Conspiracy to Commit Identity Theft)**

42.    Paragraphs 1-12 and 14-41 of Count 1 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

43.    In causing the test adjudications, defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI knowingly conspired to cause and caused the transfer, possession, and use of a means of identification of other persons without the lawful authority of the other persons.

44.    Defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI knowingly conspired to cause and caused the transfer, possession, and use of the means of identification of other persons with the intent to commit, and to aid or abet, and in connection with, an unlawful activity that constitutes a violation of Federal law, namely, wire fraud, health care fraud, and conspiracy to commit health care fraud and wire fraud.

45.    From in or about July 2013 through in or about December 2016, in the District of New Jersey, and elsewhere, defendants

CHRISTOPHER KYLE JOHNSTON,
TRENT BROCKMEIER, and
CHRISTOPHER CASSERI

did knowingly and intentionally conspire and agree with each other and with others to commit offenses against the United States, that is, without lawful authority, to knowingly use means of identification of other persons, that is, the names, dates of birth, and insurance identification information of individuals who had previously received Central Rexall prescription medications, in and affecting interstate commerce, with the intent to commit, and to aid or abet, and in connection with, an unlawful activity that constitutes a violation of Federal law, namely, wire fraud, health care fraud, and conspiracy to commit health care fraud and wire fraud, contrary to

13

18 U.S.C. §§ 1343, 1347, and 1349, in violation of Title 18, United States Code, Sections 1028(a)(7).

**Object of the Conspiracy**

46.    It was the object of the conspiracy for defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI to use identifying information from other persons to submit false claims to Pharmacy Benefits Administrator, use the information obtained from those false claims to design expensive compounded medications, and then share in the profits realized by Central Rexall from payments for the compounded medications.

**Manner and Means of the Conspiracy**

47.    It was part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI caused Central Rexall employees and contractors to use the identifying information, including patient names, dates of birth, and insurance information, from prescriptions that Central Rexall had previously received.

48.    It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI caused Central Rexall employees and contractors to use the identifying information, including patient names, dates of birth, and insurance information, to submit false test adjudications for compounded medications without the knowledge or consent of the individuals whose identifying information was used.

**Overt Acts**

49.    In furtherance of the conspiracy and in order to effect the object of the conspiracy, defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and

14

CHRISTOPHER CASSERI committed or caused the commission of the following overt acts, in the District of New Jersey and elsewhere:

      a.      On or about October 6, 2015, defendants CHRISTOPHER CASSERI sent a text message to William Hickman in New Jersey concerning test adjudications.

      b.      On or about November 10, 2015, defendant CHRISTOPHER CASSERI sent a text message to William Hickman in New Jersey concerning test adjudications.

      c.      On or about October 1, 2015, defendant TRENT BROCKMEIER received an email from another Central Rexall employee concerning a test adjudication.

      d.      On or about October 15, 2015, William Hickman, through his company Boardwalk Medical LLC, received in New Jersey a payment from Central Rexall of $2,447,076.19 for his work and the work of people working with him to find patients in New Jersey to receive Central Rexall prescriptions.

      e.      After October 15, 2015, William Hickman and people working with him continued to try to find patients in New Jersey to receive Central Rexall prescriptions.

      f.      On or about January 7, 2016, a Central Rexall prescription for Individual 3 was signed in New Jersey and faxed to Central Rexall.

      g.      On or about February 24, 2016, defendant CHRISTOPHER CASSERI sent an email to a Central Rexall contractor asking the contractor to run a test adjudication using the identifying information of Individual 3 and another individual from New Jersey.

      All in violation of Title 18, United States Code, Section 371.

## COUNT 3
### (False statements)

50.     Paragraphs 1-12 and 14-41 of Count 1 of this Indictment and paragraphs 43-44 and 46-49 of Count 2 of this Indictment are hereby realleged and incorporated as though set forth in full herein.

51.     On or about August 28, 2020, defendant CHRISTOPHER CASSERI was interviewed by Special Agents of the Federal Bureau of Investigation, Internal Revenue Service, and Department of Labor, and representatives of the United States Attorney's Office for the District of New Jersey.

52.     Before he started speaking in the August 28, 2020 interview, defendant CHRISTOPHER CASSERI was advised and understood that the interview was part of a criminal investigation conducted by the United States Department of Justice and Federal Bureau of Investigation.

53.     During the August 28, 2020 interview, defendant CHRISTOPHER CASSERI made the following false statements and representations:

a.     He never directed that a test adjudication be made with a specific patient.

b.     He never told any Central Rexall distributors to select the maximum number of refills on Central Rexall's preprinted prescription pads.

c.     He never told any Central Rexall distributors to promote the Central Rexall medication containing resveratrol for weight loss.

d.     He never sent information about the properties of Central Rexall compounds to Central Rexall distributors.

e.     He spoke to William Hickman only every three weeks.

    f.  No one at Central Rexall notified him that the Pharmacy Benefits Administrator was conducting an audit or an investigation, and he did not talk to William Hickman regarding a Pharmacy Benefits Administrator audit or investigation.

   54.  On or about August 28, 2020, in the District of New Jersey, and elsewhere, defendant

CHRISTOPHER CASSERI

did knowingly and willfully make materially false, fictitious, and fraudulent statements and representations, as set forth in paragraph 53 of this Indictment, in a matter within the jurisdiction of the executive branch of the Government of the United States, namely a criminal investigation conducted by the United States Department of Justice and Federal Bureau of Investigation, knowing that such statements and representations were materially false, fictitious, and fraudulent.

   In violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT 4
### (Conspiracy to Commit Money Laundering)

55.    Paragraphs 1-12 and 14-41 of Count 1 of this Indictment and paragraphs 43-44

and 46-49 of Count 2 of this Indictment are hereby realleged and incorporated as though set forth

in full herein.

56.    From in or about January 2014 through in or about January 2017, in the District of

New Jersey, and elsewhere, defendants

CHRISTOPHER KYLE JOHNSON and
TRENT BROCKMEIER

knowing that the property involved in the financial transactions represented the proceeds of

unlawful activity, namely, conspiracy to commit health care fraud and wire fraud, did knowingly

conspire and agree with each other and with others to engage in monetary transactions by,

through and to a financial institution, affecting interstate and foreign commerce, in criminally

derived property of a value greater than $10,000, such property having been derived from

conspiracy to commit health care fraud and wire fraud, contrary to Title 18, United States Code,

Section 1957(a).

### Manner and Means of the Conspiracy

57.    It was part of the conspiracy that Central Rexall received payments from

Pharmacy Benefits Administrator and other sources, including payments funded by the State of

New Jersey for SHBP and SEHBP beneficiaries, which represented proceeds of the conspiracy to

commit health care fraud and wire fraud.

58.    It was further part of the conspiracy that Central Rexall, through payments to

Bluen Medical and PMG, paid defendants CHRISTOPHER KYLE JOHNSTON and TRENT

BROCKMEIER a portion of the amounts received from Pharmacy Benefits Administrator and

other sources, which represented proceeds of the conspiracy to commit health care fraud and wire fraud.

59.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the transfer of the proceeds of the conspiracy to commit health care fraud and wire fraud from the State of New Jersey to Pharmacy Benefits Administrator and from Pharmacy Benefits Administrator to Central Rexall's bank account in Louisiana, and then caused the transfer of the proceeds from Central Rexall's bank account to the bank accounts of Bluen Medical and PMG and from the bank accounts of Bluen Medical and PMG to the personal bank accounts of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER.

60.     It was further part of the conspiracy that defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER engaged in transactions in amounts exceeding $10,000 with the proceeds of the conspiracy to commit health care fraud and wire fraud.

61.     As part of the conspiracy, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused financial transactions affecting interstate and foreign commerce to occur, as set forth below:

        a.     On or about September 23, 2015, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $2,205,000 from Central Rexall's bank account to the bank account of Bluen Medical.

        b.     On or about September 23, 2015, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $270,000 from Central Rexall's bank account to the bank account of PMG.

c.     On or about September 24, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,941,500 from Bluen Medical's bank account to his personal bank account.

d.     On or about September 24, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $165,000 from PMG's bank account to his personal account.

e.     On or about September 24, 2015, defendant TRENT BROCKMEIER caused the transfer of $258,500 from Bluen Medical's bank account to his personal bank account.

f.     On or about September 24, 2015, defendant TRENT BROCKMEIER caused the transfer of $22,000 from PMG's bank account to his personal bank account.

g.     On or about October 28, 2015, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $1,485,000 from Central Rexall's bank account to the bank account of Bluen Medical.

h.     On or about October 28, 2015, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $315,000 from Central Rexall's bank account to the bank account of PMG.

i.     On or about October 30, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,310,512.50 from Bluen Medical's bank account to his personal bank account.

j.     On or about October 30, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $206,250 from PMG's bank account to his personal bank account.

20

k.      On or about October 30, 2015, defendant TRENT BROCKMEIER caused the transfer of $174,487.50 from Bluen Medical's bank account to his personal bank account.

l.      On or about October 30, 2015, defendant TRENT BROCKMEIER caused the transfer of $27,500 from PMG's bank account to his personal bank account.

m.      On or about December 30, 2015, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $2,000,000 from Central Rexall's bank account to the bank account of Bluen Medical.

n.      On or about December 30, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,615,000 and $220,000 from Bluen Medical's bank account to his personal bank account.

o.      On or about December 31, 2015, defendant TRENT BROCKMEIER caused the transfer of $223,250 and $34,957 from Bluen Medical's bank account to his personal bank account.

p.      On or about January 15, 2016, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $1,350,000 from Central Rexall's bank account to the bank account of Bluen Medical.

q.      On or about January 15, 2016, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,147,500 from Bluen Medical's bank account to his personal bank account.

r.      On or about January 19, 2016, defendant TRENT BROCKMEIER caused the transfer of $202,500 from Bluen Medical's bank account to his personal bank account.

s.     On or about February 16, 2016, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $1,800,000 from Central Rexall's bank account to the bank account of Bluen Medical.

t.     On or about February 16, 2016, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,530,000 from Bluen Medical's bank account to his personal bank account.

u.     On or about February 17, 2016, defendant TRENT BROCKMEIER caused the transfer of $270,000 from Bluen Medical's bank account to his personal bank account.

v.     On or about March 24, 2016, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $1,350,000 from Central Rexall's bank account to the bank account of Bluen Medical.

w.     On or about March 24, 2016, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $1,105,000 from Bluen Medical's bank account to his personal bank account.

x.     On or about March 25, 2016, defendant TRENT BROCKMEIER caused the transfer of $195,000 from Bluen Medical's bank account to his personal bank account.

y.     On or about April 20, 2016, defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER caused the wire transfer of $1,125,000 from Central Rexall's bank account to the bank account of Bluen Medical.

z.     On or about April 20, 2016, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $922,250 from Bluen Medical's bank account to his personal bank account.

aa.    On or about April 22, 2016, defendant TRENT BROCKMEIER caused the transfer of $162,750 from Bluen Medical's bank account to his personal bank account.

bb.    On or about December 30, 2015, defendant CHRISTOPHER KYLE JOHNSTON caused the transfer of $2,250,000 from Central Rexall's bank account to his personal bank account.

cc.    On or about December 30, 2015, defendant TRENT BROCKMEIER caused the transfer of $300,000 from Central Rexall's bank account to his personal bank account.

In violation of Title 18, United States Code, Section 1956(h).

## COUNTS 5-24
### (Money Laundering – Transacting in Criminal Proceeds)

62.    Paragraphs 1-12 and 14-41 of Count 1 of this Indictment, paragraphs 43-44 and

46-49 of Count 2 of this Indictment, and paragraphs 57-61 of Count 4 of this Indictment are

hereby realleged and incorporated as though set forth in full herein.

63.    On or about the dates specified below, the defendant specified per count below

did knowingly engage in the monetary transactions specified below by, through and to a

financial institution, affecting interstate and foreign commerce, in criminally derived property of

a value greater than $10,000, such property having been derived from conspiracy to commit

health care fraud and wire fraud:

| Count | Defendant | Date | Amount | Transaction |
|-------|-----------|------|--------|-------------|
| 5 | CHRISTOPHER KYLE JOHNSTON | 9/24/15 | $1,941,500 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 6 | CHRISTOPHER KYLE JOHNSTON | 9/24/15 | $165,000 | Debit transfer from PMG's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 7 | TRENT BROCKMEIER | 9/24/15 | $258,500 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 8 | TRENT BROCKMEIER | 9/24/15 | $22,000 | Electronic payment from PMG's bank account to TRENT BROCKMEIER's personal bank account |
| 9 | CHRISTOPHER KYLE JOHNSTON | 10/30/15 | $1,310,512.50 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |

| Count | Defendant | Date | Amount | Transaction |
|---|---|---|---|---|
| 10 | CHRISTOPHER KYLE JOHNSTON | 10/30/15 | $206,250 | Debit transfer from PMG's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 11 | TRENT BROCKMEIER | 10/30/15 | $174,487.50 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 12 | TRENT BROCKMEIER | 10/30/15 | $27,500 | Electronic payment from PMG's bank account to TRENT BROCKMEIER's personal bank account |
| 13 | CHRISTOPHER KYLE JOHNSTON | 12/30/15 | $1,615,000 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 14 | CHRISTOPHER KYLE JOHNSTON | 12/30/15 | $220,000 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 15 | TRENT BROCKMEIER | 12/31/15 | $223,250 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 16 | TRENT BROCKMEIER | 12/31/15 | $34,957 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 17 | CHRISTOPHER KYLE JOHNSTON | 1/15/16 | $1,147,500 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 18 | TRENT BROCKMEIER | 1/19/16 | $202,500 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |

| Count | Defendant | Date | Amount | Transaction |
|-------|-----------|------|--------|-------------|
| 19 | CHRISTOPHER KYLE JOHNSTON | 2/16/16 | $1,530,000 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account. |
| 20 | TRENT BROCKMEIER | 2/17/16 | $270,000 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 21 | CHRISTOPHER KYLE JOHNSTON | 3/24/16 | $1,105,000 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 22 | TRENT BROCKMEIER | 3/25/16 | $195,000 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |
| 23 | CHRISTOPHER KYLE JOHNSTON | 4/20/16 | $922,250 | Debit transfer from Bluen Medical's bank account to CHRISTOPHER KYLE JOHNSTON's personal bank account |
| 24 | TRENT BROCKMEIER | 4/22/16 | $162,750 | Wire transfer from Bluen Medical's bank account to TRENT BROCKMEIER's personal bank account |

In violation of Title 18, United States Code, Section 1957, and Title 18, United States Code, Section 2.

## FORFEITURE ALLEGATION
### Count 1

1.      Upon conviction of the conspiracy offense alleged in Count 1 of this Indictment,

defendants CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and

CHRISTOPHER CASSERI shall forfeit to the United States:

      a.      Pursuant to 18 U.S.C. § 982(a)(7), all property, real and personal, the respective defendants obtained that constitutes or is derived, directly and indirectly, from gross proceeds traceable to the commission of the conspiracy to commit health care fraud, contrary to 18 U.S.C. § 1347, and all property traceable to such property; and

      b.      Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), all property, real and personal, the respective defendants obtained that constitutes or is derived from proceeds traceable to the commission of the conspiracy to commit wire fraud, contrary to 18 U.S.C. § 1343, and all property traceable to such property.

### Count 4

2.      Upon conviction of the money laundering conspiracy offense alleged in Count 4

of this Indictment, defendants CHRISTOPHER KYLE JOHNSTON and TRENT

BROCKMEIER shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property,

real and personal, involved in such offense, and all property traceable to such property.  Such

property includes, but is not limited to, all right, title, and interest of defendants CHRISTOPHER

KYLE JOHNSTON and TRENT BROCKMEIER in the property listed in the forfeiture

allegation as to Count 1.

### Counts 5-24

3.      Upon conviction of one or more of the money laundering offenses alleged in

Counts 5-24 of this Indictment, defendants CHRISTOPHER KYLE JOHNSTON and TRENT

BROCKMEIER shall forfeit to the United States, pursuant to 18 U.S.C. § 982(a)(1), all property,

real and personal, involved in the money laundering offense charged in each such count, and all

property traceable to such property.  Such property includes, but is not limited to, all right, title, and interest of defendants CHRISTOPHER KYLE JOHNSTON and TRENT BROCKMEIER in the property listed in the forfeiture allegation as to Count 1.

## SUBSTITUTE ASSETS PROVISION
### (Applicable to All Forfeiture Allegations)

4.      If any of the above-described forfeitable property, as a result of any act or omission of the respective defendant:

a.      cannot be located upon the exercise of due diligence;

b.      has been transferred or sold to, or deposited with, a third person;

c.      has been placed beyond the jurisdiction of the Court;

d.      has been substantially diminished in value; or

e.      has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c) and 18 U.S.C. § 982(b), to seek forfeiture of any other property of the respective defendant up to the value of the above-described forfeitable property.



A TRUE BILL

FOREPERSON

_Craig Carpenito/MB_

CRAIG CARPENITO
United States Attorney
District of New Jersey

CASE NUMBER: 20-

United States District Court
District of New Jersey

UNITED STATES OF AMERICA

v.

CHRISTOPHER KYLE JOHNSTON,
TRENT BROCKMEIER, and
CHRISTOPHER CASSERI

INDICTMENT FOR
18 U.S.C. §§ 1349, 371, 1001, 1956(h), 1957, and 2



A True Bill

Foreperson

CRAIG CARPENITO
U.S. ATTORNEY, NEWARK, NEW JERSEY

R. DAVID WALK, JR.
CHRISTINA O. HUD
ASSISTANT U.S. ATTORNEYS
CAMDEN, NEW JERSEY
(856) 757-5026

USA-48AD8
(Ed. 1/97)