## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 20-cr-800 (RBK) |
| v. | |
| CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI | Hon. Robert B. Kugler, U.S.D.J. |

### NOTICE OF MOTION OF THE UNITED STATES OF AMERICA FOR A PROTECTIVE ORDER PURSUANT TO FEDERAL RULE OF CRIMINAL PROCEDURE 16

PLEASE TAKE NOTICE that the United States of America (Craig Carpenito, United States Attorney, by Christina O. Hud and R. David Walk, Jr., Assistant U.S. Attorneys appearing) move before The Honorable Robert B. Kugler, U.S.D.J., for a protective order pursuant to Federal Rule of Criminal Procedure 16 in the above-captioned matter. The United States relies on the enclosed brief and accompanying exhibit in support of its motion.

Respectfully Submitted,

CRAIG CARPENITO
United States Attorney

_____
R. DAVID WALK, JR.
CHRISTINA O. HUD
Assistant U.S. Attorneys
United States Attorney's Office
District of New Jersey

Dated: December 2, 2020

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| UNITED STATES OF AMERICA | Criminal No. 20-cr-800 (RBK) |
| v. | |
| CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI | Hon. Robert B. Kugler, U.S.D.J. |

**BRIEF OF THE UNITED STATES OF AMERICA IN SUPPORT OF ITS**
**MOTION FOR A PROTECTIVE ORDER**

The United States of America ("the Government") submits this brief in support of its motion pursuant to Federal Rule of Criminal Procedure 16 for entry of the enclosed proposed protective order (the "Proposed Order").  *See* Exhibit A.

The Government is prepared to produce voluminous discovery to the defendants. These materials include, but are not limited to: patient files, prescriptions and pharmacy records, insurance and pharmacy benefits administrator documents containing prescriber and patient information, financial and bank records, business records, tax returns, travel records, emails and text messages, and numerous memoranda of interviews conducted by federal agents during the investigation (the "Discovery Materials"). The Discovery Materials contain substantial confidential and highly sensitive information, including individual identifiers, health records, and information pertaining to numerous charged and uncharged individuals involved in this investigation, related charged cases,[1] and other ongoing investigations.

---

[1] As the Court is aware, there are four related multi-defendant indictments. *See United States v. Hickman, et al.*, 19-cr-191 (RBK); *United States v. Monaco, et al.*, 19-cr-716 (RBK); *United States v. Sokalsky, et al.*, 20-cr-544 (RBK); and *United States v. Ritson,*

2

Accordingly, the Government believes that a protective order is necessary and appropriate to prevent the unnecessary disclosure of the Discovery Materials to third parties.  The Proposed Order will expedite discovery without in any way prejudicing the defendants' ability to prepare their defense.  Given the volume and differing types of confidential materials, the Government proposes entry of an "umbrella" protective order, which initially designates all materials as confidential and sets forth procedures for using and disclosing the Discovery Materials.  Umbrella protective orders are common in the Third Circuit, and the Proposed Order is the same form of order that this Court has entered in the four related indicted cases pending before it.

Unfortunately, the defense has declined to consent to the entry of the Proposed Order.  The Government has conferred with defense counsel to explain the confidential nature of the Discovery Materials and to attempt to negotiate entry of a protective order.  The Government agreed to include certain requested changes to the draft order, but the defense nevertheless refused to consent to its entry.  Specifically, defense counsel will only agree to designate patient records and prescriptions as confidential, and aver that the other Discovery Materials need not be covered by a protective order.  The defense also seeks to have the Government go through the voluminous Discovery Materials again—the first production alone totaling approximately 1.4 million pages—and individually identify and designate documents as "confidential" and "non-confidential," per their definitions of those terms.

---

*et al.*, 20-cr-764 (RBK). Additionally, to date, 31 people have pled guilty in related cases to offenses associated with the compound medications.

For the reasons set forth below, the Court should grant this motion and enter the Proposed Order, which would allow defense counsel unfettered use of the Discovery Materials to prepare their defense and prevent disclosure of the Discovery Materials for any other purpose.

## I.      BACKGROUND

### A.      The Indictment

As alleged in the Indictment, defendants Christopher Kyle Johnson, Trent Brockmeier, and Christopher Casseri orchestrated a massive criminal conspiracy that defrauded federal and New Jersey state health insurance plans out of more than $50 million through fraudulent compound prescription medications.  As former executives of compound pharmacy Central Rexall Drugs, Inc. ("Central Rexall"), the defendants were at the pinnacle of the scheme.  They dictated the scheme's extensive operations, which flowed downward to an extensive "sales force" in New Jersey and elsewhere in the country.  Many "sales representatives" did not have a pharmaceutical or sales background, and most individuals only agreed to receive the compound medications because they were paid or received remuneration to do so.  The defendants personally pocketed tens of millions of dollars in fraudulent proceeds from the scheme.

As described in the Indictment, defendants Johnston and Brockmeier approached Central Rexall about greatly expanding its compound drug operations. They entered into management agreements under which they would manage Central Rexall and receive 90% of its net profits.  Johnston and Brockmeier orchestrated the expansion of Central Rexall from a small local retail pharmacy in Hammond, Louisiana into an operation that marketed compound medications across the country.

Johnston—an experienced attorney—financially backed the enterprise, established the framework, and appointed himself the general counsel of Central Rexall. Brockmeier directed the day-to-day operations of the pharmacy, and Casseri oversaw the management of the sales force and sales operations. At the direction of the defendants, Central Rexall's focus became finding whatever combinations of medications were covered by insurance for the highest amounts of money. To find these combinations, patients' confidential information was used without their knowledge to send false electronic test claims to the pharmacy benefits manager to ascertain whether the combination of ingredients was covered by certain insurance plans. No studies or testing of the effectiveness of these combinations was performed—they were chosen purely based on the amount of insurance reimbursements.

On September 16, 2020, after a lengthy investigation, a grand jury sitting in Camden, New Jersey returned a 24-count Indictment against Johnston, Brockmeier, and Casseri. The Indictment charges them with orchestrating and furthering a health care and wire fraud conspiracy in connection with the fraudulent prescriptions, and further alleges that they conspired to commit identity theft by using individuals' identifying information to run the test adjudications. Johnston and Brockmeier are also charged with conspiring to engage in money laundering and 20 substantive counts of money laundering. Casseri is also charged with making false statements for lying repeatedly to federal agents and prosecutors when he was interviewed during the investigation.

**B.** **Discovery and the Proposed Order**

As provided by Rule 16 of the Federal Rules of Criminal Procedure and the Court's Standing Order on Discovery, the Government has prepared discovery to produce to the defense.[2]  As the Government stated at the last status conference with the Court, given the volume of materials, it will produce discovery on a rolling basis.

The Discovery Materials are vast.  The first production alone consists of approximately 313,800 documents and close to 1.4 million pages.  Much of the material contains confidential information, including patient and prescriber health information, financial and tax records, potentially proprietary business information, hospital and medical office records, insurance information, employment records, and individual identifiers such as social security numbers, dates of birth, addresses, phone numbers, and bank account numbers.  The Discovery Materials also include sensitive information regarding charged and uncharged individuals, cooperators, victims, witnesses, co-conspirators, individuals involved in ongoing investigations, and individuals likely to testify at upcoming trials.

Accordingly, the Government proposes a protective order that takes into account these legitimate confidentiality interests, while simultaneously giving the defendants access to the materials to prepare their defense.  Specifically, the Proposed Order provides, among other things, as follows:

---

[2]  The Government will necessarily await a ruling by the Court on its motion before providing copies of the Discovery Materials to the defendants.

1.  The Discovery Materials may be used by the defendants to prepare their defense of this case, but shall not be used for any other purpose. *See* Ex. A ¶ 6(c).

2.  The Discovery Materials shall not be disclosed to anyone other than the defendants, defense counsel and their staff, and any agent working at the direction of defense counsel in this matter. To the extent the parties wish to include anyone else on the list of those who may view the materials, they may request leave of Court or the Government's permission to do so. ¶¶ 5, 8.

3.  The defense may show the Discovery Materials to prospective witnesses to the extent deemed necessary, but the materials may not be remain in the custody of the witnesses and the witnesses must be made aware of and provided a copy of the protective order. ¶¶ 5, 7.

4.  If any party intends to publicly show or display any Discovery Materials in connection with a court filing or court proceeding, that party shall notify the other parties and the Court of its intention to do so beforehand, or shall file or display such documents under seal to the extent deemed necessary. ¶ 11.

5.  Any person who receives the Discovery Materials shall make efforts to store them in a secure place and shall use reasonable care to ensure that they are not disclosed or disseminated. In the event of any inadvertent disclosure, the disclosing party shall promptly provide notice of the identity of the recipient of the inadvertently produced material and shall use all reasonable efforts to secure the return or destruction of the inadvertently produced material. ¶ 9.

The Proposed Order seeks to prevent the unnecessary disclosure of the Discovery Materials for purposes unrelated to trial preparation and to avoid the risk of confidential and highly sensitive information being disseminated to the public. The Proposed Order would not restrict the defendants' ability to use the Discovery Materials to prepare their defense. Indeed, they could use the materials in support of any motions or at any hearings. At most, it would be a minor inconvenience to seal the documents at issue or give the other parties and the Court prior notice of the confidential materials before displaying them publicly. The defense would also be allowed to show the Discovery Materials to prospective witnesses (irrespective of

whether those prospective witnesses will, in fact, ultimately testify at trial), with the small caveat that the materials could not be left with the witness and that the witness would be informed of the protective order.

## II.   **ARGUMENT**

There are several reasons for the Court to enter a protective order that limits access to the Discovery Materials and protects them from unnecessary public dissemination.  Courts have routinely approved the type of "umbrella" protective order the Government seeks here, particularly when the discovery involved is voluminous.  As set forth below, the Government submits that good cause exists for entry of the Proposed Order.

### A.      The Good Cause Standard

Under Rule 16(d)(1), courts may issue protective orders "for good cause."  The rule enables the "the trial court . . . , where appropriate, [to] place a defendant and his counsel under enforceable orders against unwarranted disclosure of the materials which they may be entitled to inspect."  *Alderman v. United States*, 394 U.S. 165, 185 (1969).  "Good cause" for a protective order under Rule 16(d)(1) "'is established on a showing that disclosure will work a clearly defined and serious injury.'"  *United States v. Wecht*, 484 F.3d 194, 211 (3d Cir. 2007) (quoting *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994)).  The Court "must balance the [ ] need for information against the injury that might result if uncontrolled disclosure is compelled."  *Id*. at 787.  The Third Circuit has articulated factors to guide courts' considerations of protective orders.  These factors include: whether disclosure will violate any privacy interests; whether the information is being sought for a legitimate purpose or for an improper

purpose; whether disclosure of the information will cause a party embarrassment; whether confidentiality is being sought over information important to public health and safety; whether the sharing of information among litigants will promote fairness and efficiency; whether a party benefitting from the order of confidentiality is a public entity or official; and whether the case involves issues important to the public. *See Glenmede Tr. Co. v. Thompson*, 56 F.3d 476, 483 (3d Cir. 1995) (summarizing analysis in *Pansy*, 23 F.3d at 787-91). These same considerations are relevant to deciding whether good cause exists to restrict the disclosure of materials provided as discovery to criminal defendants under Rule 16.  *See Wecht*, 484 F.3d at 211 (adopting *Pansy* formula for good cause analysis for protective orders in criminal cases).

"Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation." *Id.* at 209 (citing *United States v. Anderson*, 799 F.2d 1438, 1441 (11th Cir. 1986)).  Thus, "the party seeking to prevent disclosure" need not "overcom[e] a strong presumption in favor of public access." *Id.* at 212 & n.22; *see also Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 (1984) (stating that "restraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information").  Courts in this Circuit have routinely authorized protective orders in criminal proceedings. *See United States v. Torres*, 2020 WL 4500046 (D.N.J. Aug. 5, 2020); *United States v. Luchko*, 2007 WL 1651139, at *7-9 (E.D. Pa. June 6, 2007); *Liu v. United States*, 2018 WL 6522924, at *2 (D.N.J. Dec. 12, 2018); *United States v. Montano*, 2018 WL 4961625 (E.D. Pa. Oct. 12, 2018); *United States v. Rose*, 2015 WL 4545250, at *1 (E.D. Pa. July 28, 2015); *United States v. Moore*, 2013 WL 3742414, at

*5 (E.D. Pa. July 17, 2013); *United States v. Williams*, 2012 WL 5869221, at *2 (E.D. Pa. Nov. 19, 2012); *United States v. Bethea*, 787 F. Supp. 75, 78-79 (D.N.J. 1992).

### B.   Good Cause Exists for a Protective Order in this Matter

Good cause exists to issue the Proposed Order in this matter. *First*, in a case that has already attracted media attention, the protective order will protect confidential information and individual identifiers from unnecessary disclosure and dissemination, as is required by federal and local court rules. *Second*, the Proposed Order will ensure the safety of witnesses, victims, cooperators, uncharged individuals, and individuals involved in ongoing investigations, as well as protect the integrity of judicial proceedings and ongoing investigations. *Third*, the Proposed Order will effectuate and streamline discovery. *Fourth*, there exists no presumption of public access here where the Proposed Order only protects information gathered during the investigation. *Fifth*, the Proposed Order in no way prejudices the defendants' ability to prepare their defense.

### 1.   The Proposed Order Will Protect Legitimate Privacy Interests and Confidential Information

As stated above, a significant number of the Discovery Materials include information that bear the hallmarks of confidentiality, including patient and health records, prescriber and health insurance information, financial and bank account numbers and reports, tax returns, potentially proprietary information, employment records, and individual identifiers such as social security numbers, dates of birth and home addresses. In recognition of the confidential nature of such information, federal and local rules require such information to be protected from dissemination, and state

that sanctions may be imposed for failing to do so.  *See* Fed. R. Crim. P. 49.1(a);[3] Fed. R. Civ. P. 5.2(a);[4] and Local Rule 5.2(17).[5]   Nevertheless, despite these legitimate privacy concerns and the Government's repeated representations that the Discovery Materials contain such confidential information, the defense will only agree to designate patient files and prescriptions as confidential.

Courts have routinely entered protective orders limiting the disclosure of such personal and sensitive information.  *Fraternal Order of Police, Lodge No. 5 v. City of Phila.*, 812 F.2d 105, 115 (3d Cir. 1987) (noting that public disclosure of financial information may be personally embarrassing and highly intrusive); *Scheetz v. The Morning Call, Inc.*, 946 F.2d 202, 207 (3d Cir. 1991) (noting that, with regard to

---

[3] Rule 49.1(a) provides: "(a) Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, a financial-account number, or the home address of an individual, a party or nonparty making the filing may include only: (1) the last four digits of the social-security number and taxpayer-identification number; (2) the year of the individual's birth; (3) the minor's initials; (4) the last four digits of the financial-account number; and (5) the city and state of the home address."

[4] Rule 5.2(a) provides: "Unless the court orders otherwise, in an electronic or paper filing with the court that contains an individual's social-security number, taxpayer-identification number, or birth date, the name of an individual known to be a minor, or a financial-account number, a party or nonparty making the filing may include only: (1) the last four digits of the social-security number and taxpayer-identification number; (2) the year of the individual's birth; (3) the minor's initials; and(4) the last four digits of the financial-account number."

[5] Local Rule 5.2 (17) provides, in relevant part: "caution must be exercised when filing documents that contain the following: (1) Personal identifying numbers, such as a driver's license number; (2) Medical records, treatment, and diagnoses; (3) Employment history; (4) Individual financial information; and (5) Proprietary or trade secret information.  Additional items for criminal cases [include]: (1) Information regarding an individual's cooperation with the government; (2) Information regarding the victim of any criminal activity; (3) National security information; and (4) Sensitive security information . . . [I]t is the sole responsibility of counsel and the parties to be sure that pleadings and other papers comply with the rules and orders of this Court . . . Counsel and parties are cautioned that failure to redact personal identifiers in a document filed with the Court may subject them to the full disciplinary and remedial power of the Court, including sanctions[.]"

"medical or financial records . . . there is a reasonable expectation that privacy will be preserved"); *Portofino, LLC v. Cali*, 2007 WL 9782906, at *2 (D.N.J. Nov. 26, 2007) (entering order to preclude tax and financial information from public dissemination); *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 2005 WL 8174796, at *3 (D.N.J. Mar. 10, 2005) (entering order to preclude disclosure of financial and proprietary information); *Robinson v. Horizon Blue Cross-Blue Shield of N.J.*, 2013 WL 6858956, at *1 (D.N.J. Dec. 23, 2013) (entering order precluding disclosure of tax records); *Bishop v. AT&T Corp.*, 256 F.R.D. 503, 509 (W.D. Pa. 2009) (discussing order limiting use of social security and phone numbers); *Castle v. Crouse*, 2004 WL 1151710, at *3 (E.D. Pa. May 24, 2004) ("As to claimants' personal information, such as name, address, telephone number, e-mail address, social security number, and other personal identifying information, no one disputes the strong privacy interest at stake. . . .[G]ood cause exists at this time to enter a protective order as to this information."); *Holloway v. Sessions*, 2017 WL 5077699, at *1 (M.D. Pa. Nov. 3, 2017) (entering order restricting use of social security numbers, birth dates, addresses, email addresses, health records, and records concerning criminal charges).

Here, the Court should exercise its "power[] . . . to prevent abuses, oppression, and injustices" to reduce the risk of harm that may result from disclosure of this confidential information. *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984). Many of the Discovery Materials were never intended for public consumption. They contain highly sensitive and personal information about a variety of individuals who have not necessarily been the subject of public reports and who may never be—or may ultimately be—criminally charged. Dissemination of information could cause

"unnecessary or serious pain," *Pansy*, 23 F.3d at 787, which is particularly lamentable because much of this information is likely "irrelevant to the criminal proceeding." *United States v. Luchko*, 2007 WL 1651139, at *7 (E.D. Pa. June 6, 2007). And, even if the information is relevant, the Proposed Order gives the defendants ample opportunity to use the documents.  Thus, the Court should enter the Proposed Order which limits the unnecessary dissemination of this information.

> 2.    The Proposed Order Will Protect Witnesses, Victims, Cooperators, Uncharged Individuals, and Individuals Involved in Ongoing Investigations and Court Proceedings

There are significant privacy interests and safety concerns at stake in this case associated with numerous witnesses, victims, cooperators, uncharged persons, individuals involved in ongoing investigations, and individuals who may testify at upcoming trials.  Entry of a protective order will safeguard these individuals from disclosure of irrelevant, personal, and potentially embarrassing information, and avoid fueling public conjecture regarding the actions, roles, or identities of uncharged or not-yet-charged individuals interviewed or investigated by the Government.  Even more importantly, avoiding the public identification of such individuals—at least until necessary at trial—will ensure their safety and protect the integrity of judicial proceedings and ongoing investigations.  Indeed, this is a very real concern, as two individuals to date have been charged with (and one has pled guilty to) tampering with witnesses in matters related to this case that are pending before the Court.[6]

---

[6]  *See United States v. Sokalsky, Tornari, & Lyons-Valenti*, 20-cr-544 (RBK) and *United States v. Bruno*, 19-cr-914 (RBK).

The Discovery Materials contain "information that . . . if publicly released could be damaging" and "[t]he [G]overnment clearly has a substantial interest in preventing this sort of abuse of its processes." *Seattle Times*, 467 U.S. at 35. Given the magnitude and complexity of this matter and the numerous related cases, absent a protective order, the defense may not realize that a document which on its face does not immediately appear to be confidential may in fact relate to a cooperator, victim, witness, or individual involved in an ongoing investigation. The protective order will "prevent the infliction of unnecessary or serious pain on [these] parties who . . . are entitled to such protection." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 787 (3d Cir. 1994). Any minimal burden on the defense is far outweighed by the risks posed by disclosure of this information. Further, the protective order will serve the public's "interest in preserving the confidentiality of investigatory processes so as not to chill such candor in the future," *Luchko*, 2007 WL 1651139 at *9, and will ensure the integrity and fairness of judicial proceedings. Entry of the Proposed Order safeguards these substantial interests.

        3.    <u>The Proposed Order Will Promote Expeditious Discovery</u>

The Proposed Order will promote efficient and expeditious discovery in a large case. "[I]t will permit defendants, rather than the government, to sift through the materials to determine what is or is not relevant to their defense." *Id.* at *8; *see also United States v. Moussaoui*, 483 F.3d 220, 238 (4th Cir. 2007). It would also obviate the need for the Government to engage in the time-consuming and lengthy process— thereby significantly delaying discovery—of identifying information on a document-by-document basis in such a voluminous case. *See United States v. Chow*, 2014 WL

2093488, at *2 (N.D. Cal. May 19, 2014) (recognizing "practical" need for protective order to avoid "time-consuming line-by-line redaction" of "sensitive material").  Thus, these concerns weigh heavily in favor of issuing the protective order.

> ### 4.   The Public Has No Right of Access to the Discovery Materials

Unlike filed judicial and trial records, there is no public right of access to pre-trial discovery materials. *Seattle Times*, 467 U.S. at 30-31.  Rather, the sole purpose of discovery is preparation for trial.  The public's interest in these proceedings will be served by an open and public trial.  Once that time comes, the Government will present admissible evidence to prove its case; the defense will use admissible material to zealously represent their clients; and the public has a right of access to such proceedings.  That time, however, is not now.  Thus, given that the Discovery Materials are not trial evidence, the public has no right of access to them at this time.

> ### 5.   The Proposed Order Does Not Prejudice the Defendants

The Proposed Order would not restrict the defendants' ability to use the Discovery Materials to prepare their defense. Specifically, within the bounds necessary to do so, the defendants explicitly are permitted to show the materials to prospective witnesses (irrespective of whether or not those individuals ultimately will testify at trial), and to use the Discovery Materials in court proceedings and when filing motions. As summarized above, the Proposed Order merely mandates a few procedural safeguards to address the legitimate confidentiality concerns present here.  These safeguards are, at most, minor inconveniences that in no way prejudice or impede the defendants' ability to prepare their defense.  The benefits of ensuring the safety of

individuals and protecting confidential information far outweighs any minimal encumbrances placed on the defense by the protective order.

### C.   The Proposed Umbrella Protective Order Is Warranted

The Government requests entry of an "umbrella" protective order that covers all of the Discovery Materials.  Such protective orders are common in this District, and is the same form of order as those entered by the Court in the four related indicted cases pending before the Court.  Indeed, the Third Circuit has commended the use of umbrella protective orders in appropriate situations:

> It is correct that the burden of justifying the confidentiality of each and every document sought to be covered by a protective order remains on the party seeking the protective order . . . That does not mean, however, that the party seeking the protective order must necessarily demonstrate to the court in the first instance on a document-by-document basis that each item should be protected. It is equally consistent with the proper allocation of evidentiary burdens for the court to construct a broad "umbrella" protective order upon a threshold showing by one party (the movant) of good cause. Under this approach, the umbrella order would initially protect all documents that the producing party designated in good faith as confidential. . . . [T]he umbrella order approach is less time-consuming and burdensome to the parties and the court than the document-by-document method. . . . [T]he umbrella order will encourage efficiency and allow litigation to proceed more quickly.

*Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1122-23 n.18 (3d Cir. 1986); *see also Pearson v. Miller,* 211 F.3d 57, 73 (3d Cir. 2000) ("[A] district court is empowered to issue umbrella protective orders protecting classes of documents after a threshold showing by the party seeking protection."); *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 786 (3d Cir. 1994), 23 F.3d at 787 ("[B]ecause of the benefits of umbrella protective orders in cases involving large-scale discovery, the court may construct a broad umbrella protective order upon a threshold showing by the movant of good cause"); *Zurich Am. Ins. Co. v. Keating Bldg. Corp.*, 2005 WL 8174796, at *3 (D.N.J. Mar. 10,

2005) ("[T]he Third Circuit [has] approved the use of umbrella protective orders in complex litigation to promote efficiency."). Courts have approved the use of umbrella protective orders in criminal proceedings involving voluminous discovery. *See United States v. Luchko*, 2007 WL 1651139, at *10-11 (E.D. Pa. June 6, 2007); *United States v. Smith*, 985 F. Supp. 2d 506, 545-46 (S.D.N.Y. 2013).

An umbrella protective order is appropriate here given the large-scale nature of the discovery and the significant delay that would result from making document-by-document designations. *See Cipollone*, 785 F.2d at 1122-23 (stating that "the umbrella order approach has several advantages over the document-by-document method [and] . . . caselaw also supports the view that the use of umbrella orders in the district court is a useful method of dealing with large-scale discovery"). Additionally, by designating all documents as confidential from the outset, concerns regarding the disclosure of confidential and sensitive information are significantly allayed. Accordingly, the Court should enter the Proposed Order.

**\* \* \***

## **CONCLUSION**

For all of the reasons set forth above, good cause exists for the Court to enter the Proposed Order.

Respectfully Submitted,

CRAIG CARPENITO
United States Attorney

_____
R. DAVID WALK, JR.
CHRISTINA O. HUD
Assistant U.S. Attorneys
United States Attorney's Office
District of New Jersey

Dated: December 2, 2020

## CERTIFICATE OF SERVICE

I, Assistant U.S. Attorney Christina O. Hud, hereby certify that the enclosed Motion for Protective Order was served on defense counsel for all defendants via ECF and electronic mail.

_____

CHRISTINA O. HUD
Assistant U.S. Attorney
United States Attorney's Office
Dated: December 2, 2020                    District of New Jersey

# EXHIBIT A

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA     :     Crim. No. 20-800 (RBK)

       v.        :

CHRISTOPHER KYLE JOHNSTON,   :    <u>PROTECTIVE ORDER</u>
TRENT BROCKMEIER, and
CHRISTOPHER CASSERI      :

      This matter having come before the Court on the Motion of the United States for a Protective Order Pursuant to Federal Rule of Criminal Procedure 16, it is hereby ORDERED as follows:

      1.    The Indictment in this matter charges the following crimes: (1) Christopher Kyle Johnston, Trent Brockmeier, and Christopher Casseri with conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; (2) Christopher Kyle Johnston, Trent Brockmeier, and Christopher Casseri with conspiracy to commit identity theft, in violation of Title 18, United States Code, Section 371; (3) Christopher Casseri with false statements, in violation of Title 18, United States Code, Section 1001(a)(2); (4) Christopher Kyle Johnston and Trent Brockmeier with conspiracy to commit money laundering, in violation of Title 18, United States Code, Section 1956(h); and (5) Christopher Kyle Johnston and Trent Brockmeier with money laundering, in violation of Title 18, United States Code, Sections 1957 and 2.

      2.    In compliance with the Government's disclosure obligations, the Government shall disclose to the Defendants, by and through their counsel, documents and records, many of which contain confidential medical, financial, and other personal information about victims, witnesses, and other uncharged persons, as well as about the Defendants, including but not limited to prescriptions, documentation regarding prescriptions, medical records, bank records, and witness statements.  All documents and records produced to the defense pursuant to the Government's disclosure obligations

1

are collectively referred to as "Confidential Discovery Information."

3.      There is a significant possibility that disclosure of the Confidential Discovery Information would be detrimental to victims, witnesses, and/or uncharged persons.  Given the risks posed by disclosure and the prevalence of confidential medical, financial, and other personal information in documents produced in compliance with the Government's disclosure obligations, and in order to expedite the production of discovery materials without delay, good cause exists to treat all the discovery materials produced by the Government to the Defendants as Confidential Discovery Information. If a Defendant objects to the treatment of a document as Confidential Discovery Information, then counsel for the Defendant shall first ask the Government to agree that the restrictions of this Order do not apply to the document.  If the Government does not agree, then the Defendant may apply to the Court to have the restrictions of this Order made inapplicable to that document.

4.      Access to Confidential Discovery Information will be restricted to the following persons: the Defendants; their attorneys of record; those attorneys' associated counsel, paralegals, support staff performing services on behalf of a Defendant, investigators, financial advisors, accountants, and experts (retained pursuant to a written retainer agreement by a Defendant and/or his/her counsel in connection with the criminal case); and such other persons as hereafter may be authorized by the Court upon motion by a Defendant.  Confidential Discovery Information may be shown to prospective witnesses to the extent deemed reasonably necessary by defense counsel, but such discovery may not be given to or remain in the custody of prospective witnesses.

5.      The following restrictions will be placed on the above-designated individuals unless further ordered by the Court:

a.      Confidential Discovery Information shall only be used and provided to persons

identified in this Protective Order as having authority to receive such information;

b.      No person subject to this Protective Order shall disclose any information contained in Confidential Discovery Information to any other person except as provided for above; and

c.      No person subject to this Protective Order shall use Confidential Discovery Information for any purpose other than the defense of this case.

6.      The Defendants' attorneys shall inform any person to whom disclosure may be made pursuant to this Order of the existence and terms of this Court's Order.  The Defendants' attorneys shall provide that person a copy of this Order, and that person shall be subject to the terms of this Order.  Defense counsel shall maintain a record of all such persons who have received Confidential Discovery Information.

7.      The persons authorized by this Protective Order to receive Confidential Discovery Information may not disclose the Confidential Discovery Information to any person not identified above unless either: (a) the Defendant's counsel makes a written request to the Government for an exception to these restrictions and such a request is granted; or (b) the Defendant's counsel makes a request to the Court to authorize an additional person to receive Confidential Discovery Information and that request is granted.

8.      Any person identified in Paragraph 5 who receives Confidential Discovery Information shall store the Confidential Discovery Information in a secure place and shall use reasonable care to ensure that Confidential Discovery Information is not disclosed or disseminated to any third party in violation of this Order.  In the event of any inadvertent disclosure of Confidential Discovery Information, counsel shall promptly notify the Court and the Government as to the identity

3

of the recipient of the inadvertently produced Confidential Discovery Information and shall use all reasonable efforts to secure the return or destruction of the inadvertently produced Confidential Discovery Information.

9.      No information that is in the public domain, is already known by the receiving party through lawful means, or is received by the receiving party through lawful means shall be deemed or considered Confidential Discovery Information, provided, however, that any document produced in discovery containing that information shall be treated as Confidential Discovery Information until the restrictions on the document are lifted as provided in Paragraph 3.  Any document obtained by a Defendant or Defendant's counsel from a source other than the Government, through its discovery obligations, shall not be subject to the terms of this Order.

10.     The requested restrictions shall not limit the use or introduction as evidence of materials containing Confidential Discovery Information during hearings and trial in this matter, subject to Fed. R. Crim. P. 49.1, if the inclusion of such information is relevant to the case and the Court and the Government are given prior notice of the Defendant's intent to use such information, except that prior notice is not required to use Confidential Discovery Information in sealed court filings.  Moreover, notwithstanding any other provision, the parties shall be permitted to disclose Confidential Discovery Information in connection with the filing of motions with the Court, or for use at Court proceedings, subject to Fed. R. Crim. P. 49.1, except that the filing of any motion papers containing Confidential Discovery Information shall be made under seal.

11.     This Protective Order is binding on all future and successor counsel.

12.     The Defendants and their counsel will have no ownership or proprietary interest in the materials subject to this Order.  Upon conclusion of this litigation, each Defendant's attorneys shall return to counsel for the United States, or destroy and certify to counsel for the United States such

4

destruction, all materials containing Confidential Discovery Information, including any Confidential Discovery Information provided to the persons listed in Paragraph 5, within a reasonable time, not to exceed 30 days after the Defendant has exhausted all appellate rights.

**IT IS SO ORDERED**

this _____ day of _____ 2020.

_____
HONORABLE ROBERT B. KUGLER
UNITED STATES DISTRICT JUDGE