UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>CHRISTOPHER KYLE JOHNSTON, TRENT BROCKMEIER, and CHRISTOPHER CASSERI | Criminal No. 20-800 (ESK) |

**BRIEF IN SUPPORT OF MOTION FOR RECONSIDERATION**

**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07030
(973)596-4500

*Attorneys for Defendant*
*Christopher Kyle Johnston*

## PRELIMINARY STATEMENT

By invitation of the Court, Defendant Christopher Kyle Johnston respectfully moves for reconsideration of the Court's October 17, 2024 Order (ECF 184) denying Defendants' Motions to Dismiss Counts 5 through 24 of the Indictment (ECF 1; hereinafter, "Ind.") for lack of venue.

## FACTUAL BACKGROUND

Defendant Johnston was general counsel of Central Rexall Drugs, a pharmacy located in Hammond, Louisiana. Ind. ¶ 1(a)-(b). The Indictment alleges that the Defendants engaged in a scheme to defraud healthcare benefit programs by causing the submission of false and fraudulent claims to Pharmacy Benefits Administrator ("PBA") for "medically unnecessary" compound prescriptions; PBA's location is not alleged in the Indictment. *Id.* ¶¶ 7, 14. These claims were submitted on behalf of beneficiaries of New Jersey state insurance plans, which covered certain compounded medications that were allegedly within the scope of the scheme. *Id.* ¶¶ 5, 31.

The Indictment, following counts alleging conspiracy to commit health care and wire fraud (Count 1) and conspiracy to commit identity theft (Count 2), contains twenty-one "money laundering" counts: one alleging conspiracy to commit money laundering (Count 4) and twenty alleging substantive money laundering (Counts 5-24).[1] The Indictment alleges that Central Rexall received payments from PBA and other sources, "including payments funded by the State of New Jersey" for its healthcare plan beneficiaries, "which represented proceeds of the conspiracy to commit health care fraud and wire fraud." Ind. ¶ 57. Central Rexall then made payments to two management companies, Bluen Medical and PMG, allegedly owned by Defendants Johnston and

---

[1] Mr. Johnston is specifically charged in Counts 5, 6, 9, 10, 13, 14, 17, 19, 21, and 23. The Indictment styles the charges as "money laundering," but the actual statute charged, 18 U.S.C. § 1957, technically criminalizes engaging in monetary transactions in criminally derived property of a value greater than $10,000. We refer to this conduct as "money laundering" for ease of reference, but the Indictment does not allege the classic "concealment money laundering" criminalized in 18 U.S.C. § 1956.

1

Brockmeier. *Id.* ¶ 58. Bluen Medical and PMG in turn made payments to those Defendants' personal bank accounts. *Id.* ¶ 59. Twenty of these payments from the management companies to the personal bank accounts are each individually charged as instances of money laundering. *Id.* ¶ 63.

## PROCEDURAL HISTORY

On November 10, 2024, Defendants moved to dismiss the Indictment. ECF 126. As relevant here, Mr. Johnston argued that the money laundering counts failed on both substantive and venue grounds. *Id.* at 16-20, 45-49. Those arguments (as discussed further below) turned on the definition of "proceeds"; citing recent Third Circuit caselaw, Mr. Johnston argued that the funds did not become the "proceeds" required by the relevant statute until they entered the Defendants' personal bank accounts, and thus any transactions preceding that point could not, as a matter of law, constitute transactions in those proceeds. *See United States v. Fallon*, 61 F.4th 95, 118 (3d Cir. 2023) (holding that "a defendant's mere receipt of funds as a result of a fraudulent transaction cannot itself constitute money laundering" because it is only at that moment that the criminally derived funds become "proceeds" that the defendant can launder).

The Court denied the motion, as it did virtually all of the defense motions. ECF 184. *See also* ECF 180, 187. It held that "[t]he funds that are alleged to have been laundered became 'proceeds' when they were deposited into an account for Central Rexall that was controlled by Johnston and Brockmeier." ECF 184 at 2 (citing Ind. ¶¶ 59, 61(a), 61(b)). It therefore held that the transactions postdating the funds' entry into the Central Rexall account could constitute money laundering transactions. *Id.* The Court also held that the Indictment satisfied the statute's venue requirements. *Id.*

Mr. Johnston subsequently filed a letter with the Court, arguing that the Court's conclusion that the funds became "proceeds" upon entry into the Central Rexall account meant that the Indictment failed to adequately allege venue with respect to the money laundering counts since the relevant venue provision required that any allegedly laundered funds be "proceeds" upon leaving New Jersey; his letter relied on recent caselaw from the First Circuit. ECF 186. At a status conference held on October 30, 2024, the Court stated that it would permit Defendants to file a motion for reconsideration, and invited Defendants and the Government to collaborate on a briefing schedule. 10/30 Tr. at 5, 8. The Parties agreed that Mr. Johnston would file a formal motion for reconsideration by November 6, 2024. The Government would respond by November 13, and Mr. Johnston would reply by November 19.

## ARGUMENT

"Proper venue in criminal trials is more than just a procedural requirement; it is a constitutionally guaranteed safeguard." *United States v. Root,* 585 F.3d 145, 155 (3d Cir. 2009). As such, the Supreme Court has "repeatedly underscored the importance of safeguarding the constitutional guarantee of proper venue in criminal trials," *United States v. Perez*, 280 F.3d 318, 328 (3d Cir. 2002); indeed, it is an aspect of being tried "by a jury of one's peers" that is "unquestionably one of the most precious and sacred safeguards enshrined in the Bill of Rights," *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 572 (1976) (Brennan, J. concurring). Additionally, "venue must be proper for each count of the indictment,' *Root,* 585 F.3d at 155, and each count must be reviewed separately, *Auernheimer*, 748 F.3d at 535 ("[V]enue must be analyzed independently for each count"). A motion to dismiss portions of an indictment for defective venue allegations is cognizable before trial. *See* Fed. R. Crim. P. 12(b)(3)(A)(i); *see also United States*

*v. Cabrales*, 524 U.S. 1, 10 (1998) (affirming dismissal of money-laundering counts in indictment before trial for improper venue).

Venue for money laundering charges is governed by 18 U.S.C. § 1956(i)(1). It provides that a prosecution for a violation of § 1956 (concealment money laundering) or § 1957 (transacting in proceeds greater than $10,000) may be brought in either:

> "(A) any district in which the financial or monetary transaction is conducted; or
>
> (B) any district where a prosecution for the underlying specified unlawful activity could be brought, if the defendant participated in the transfer of the proceeds of the specified unlawful activity from that district to the district where the financial or monetary transaction is conducted."

Venue in this District, therefore, could only be appropriate in two circumstances: either Mr. Johnston engaged in a monetary transaction in the proceeds of the alleged conspiracy in New Jersey; or he engaged in a conspiracy in New Jersey and participated in the transfer of the proceeds of the alleged conspiracy from New Jersey to Louisiana, where—as provided in the Indictment—all of the alleged monetary transactions took place. Ind. ¶ 63. The Government only contends that subsection (B) applies, arguing that the Defendants "'caused the transfer of the proceeds,' which satisfies the statute's requirement to 'participate in the transfer of the proceeds,' 'from the State of New Jersey,' which tracks the statute's element of a transfer from the forum district." ECF 137 (Gov't Opposition to Defendants' Motions to Dismiss) at 61-62.

The money laundering statutes, 18 U.S.C. §§ 1956 and 1957, prohibit certain transactions in the "proceeds" of specified criminal offenses. Both statues define "proceeds" identically, as "any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity." 18 U.S.C. § 1956(c)(9); § 1957(f)(3). As noted at length in Mr. Johnston's briefing in support of his prior motion to dismiss,

4

the Third Circuit has held that "ill-gotten funds do not become 'proceeds' until *after* a defendant receives them," and "any transactions that occur *before* a defendant obtains the fruits of [his] fraudulent scheme fall outside of" the statute's scope. *Fallon*, 61 F.4th at 118 (emphasis in original). Thus, a defendant's mere receipt of funds as a result of a fraudulent transaction cannot itself constitute money laundering" because it is only at that moment that the criminally derived funds become "proceeds" that the defendant can launder them. *Id.* The Courts of Appeals are in agreement that in order for funds from criminal activity to constitute "proceeds," a defendant must have some degree of ownership, possession, or control over them. *See, e.g.*, *United States v. Piervinanzi*, 23 F.3d 670, 677 (2d Cir. 1994) (noting that the "ordinary meaning of the word 'obtained' implies possession of a thing," while the word "property" implies "ownership, or the 'exclusive right to possess, enjoy, and dispose of a thing,'" so that the use of the word "proceeds" "demonstrates a congressional intent that the proceeds of a crime be in the defendant's possession before he can attempt to transfer those proceeds in violation of § 1957") (quoting Webster's Third New International Dictionary 1559 and 1818 (1986)); *United States v. Lovett*, 964 F.2d 1029, 1042 (10th Cir. 1992) ("Congress intended to separately punish a defendant for monetary transactions that follow in time the underlying specified unlawful activity that generated the criminally derived property in the first place.").

This logic applies not only to the substantive requirements of the money laundering statutes, but also to their special venue provision, which uses the identical term "proceeds," requiring that the defendant "participated in the transfer of the *proceeds* of the specified unlawful activity from [the forum] district to the district where the financial or monetary transaction is conducted." 18 U.S.C. § 1956(i)(1)(B) (emphasis added). Thus, in order for the District of New Jersey to be a statutorily permissible venue for Counts 5-24, the funds allegedly derived from the

5

health care fraud conspiracy must have been "proceeds" when they were transferred out of the District of New Jersey, and Mr. Johnston must have participated in that transfer.  That is, Mr. Johnston must have had some degree of control or possession over those funds.

In his motion to dismiss, Mr. Johnston argued that the Indictment failed to state a money laundering offense because, as alleged, he did not "obtain" or possess the proceeds of the charged health care fraud conspiracy until the funds entered his personal bank account.  ECF 126 at 48-49.  The Court denied the motion, holding that the funds became "proceeds" when they entered Central Rexall's account.  ECF 184 at 2.  The Court's conclusion in this regard followed the Government's argument in its opposition to Defendants' motions to dismiss: "The underlying fraud—or a phase of it—was completed each time [PBA] made payments to Central Rexall's bank account. . . . Once the PBA paid Central Rexall, the fraud was complete."  ECF 137 at 44-45.  So under the Government's own framing, adopted by the Court, the earliest the funds could have become proceeds was when they were received by Central Rexall's bank account.

But it necessarily follows from the Court's holding that the funds were *not* proceeds when they were transferred from New Jersey, and thus could not satisfy § 1956(i)(1)(B).  While Mr. Johnston continues to believe that the funds did not become proceeds until even later in the chain of transactions, the Court's conclusion that the earliest point at which the funds could have become proceeds is when they entered Central Rexall's bank account means that, as interpreted by the Court, the Indictment fails to contain any facts alleging that the Defendants had the necessary control or possession of those funds while they were in New Jersey.  ECF 184 at 2; *see also United States v. Omoruyi*, 260 F.3d 291, 296-97 (3d Cir. 2001) (requiring some degree of control or possession for funds to qualify as "proceeds").

6

In *United States v. Abbas*, the First Circuit embraced precisely this argument, holding that "transfers to obtain proceeds" and "transfers of proceeds" are two distinct events, with only the latter giving rise to venue under § 1956(i)(1). 100 F.4th 267, 286 (1st Cir. 2024). The wired funds that formed the putative basis for money laundering venue in that case were not "proceeds" of wire fraud because those funds were not "in the defendant's possession or at his disposal." *Id.* This requires "at least some constructive control over funds before they can be considered 'proceeds' of crime." *Id.*; *see also id.* at 284 ("[A] [defendant] must possess or control a victim's property before that property can be considered 'proceeds.'"). *See also United States v. Castro-Aguirre*, 983 F.3d 927, 941 (7th Cir. 2020) ("The point of the money-laundering offense is to criminalize a transaction *in* proceeds, not the transaction that *creates* the proceeds.") (emphasis in original). But nothing in the Indictment alleges that Mr. Johnston "could use or exercise control over the funds here before" they were sent outside of the District of New Jersey to Central Rexall's account in Louisiana. *Id.* at 286. And now, this Court's decision is directly to the contrary. Accordingly, viewed through the lens of this Court's decision, as well as the Third Circuit's requirement that venue statutes be "narrowly construed," *United States v. Auernheimer*, 748 F.3d 525, 532-33 (3d Cir. 2014) (vacating conviction on venue grounds), Mr. Johnston did not "participate in the transfer of proceeds" of wire fraud when he supposedly facilitated the transfers from New Jersey because those "were not transactions in the proceeds of wire fraud—they were transactions to obtain those proceeds," *United States v. Huff*, 641 F.3d 1228, 1232 (10th Cir. 2011). *See also United States v. Allen*, 76 F.3d 1348, 1362 (5th Cir. 1996) (holding that money derived from a fraudulent scheme "did not become proceeds until it left the account of the victims and reached the account of the defendant"); *Abbas*, 100 F.4th at 286 ("[A]t the earliest, Abbas acquired 'proceeds' of wire fraud when the funds entered his bank accounts in Illinois and California.").

7

Nor can the Indictment's barebones recitation of the venue requirement save Counts 5-24. In Paragraph 59, the Indictment states that the Defendants "caused the transfer of the proceeds of the conspiracy to commit health care fraud and wire fraud from the State of New Jersey to Pharmacy Benefits Administrator and from Pharmacy Benefits Administrator to Central Rexall's bank account in Louisiana . . . ." Ind. ¶ 59. This legal conclusion, bereft of any supporting facts to support the conclusion that the funds at issue were "proceeds" at that time, fails to remedy the Indictment's "facially obvious defect" in alleging venue. *Perez*, 280 F.3d at 327. In other words, even though the Indictment makes an effort to track the language of the relevant criminal statute, it nevertheless fails to adequately allege venue because the specific facts alleged in the Indictment do not satisfy the necessary elements for venue. *Cf. United States v. Huet*, 665 F.3d 588, 595 (3d Cir. 2012) ("Although the Government is not required to set forth its entire case in the indictment, 'if the specific facts' that are alleged 'fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation,' the indictment fails to state an offense.") (quoting *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (holding that an Indictment that tracks the relevant statutory language can still fail to state an offense if the facts alleged fail to satisfy the offense's necessary elements)).

Of course, the Government will argue (as it always does) that it is not required to set forth all of its evidence in the Indictment, and that Mr. Johnston's challenge must wait until after trial. But Federal Rule of Criminal Procedure 12(b)(3) not only permits defendants to raise challenges to improper venue before trial; it actually requires that they do so. And this Indictment, containing facially inadequate venue allegations, is particularly suited to a pretrial ruling on an issue that the Third Circuit has described as "extraordinarily important." *Auernheimer*, 748 F.3d at 540 ("The founders were so concerned with the location of a criminal trial that they placed the venue

requirement . . . in the Constitution in two places. *See* U.S. Const. art. III, § 2, cl. 3 and amend. VI."). Indeed, ruling on Mr. Johnston's venue challenge is the only way to avoid the outcome in *Abbas*: a lengthy and costly trial being overturned as a result of defective venue that was apparent from the face of the charging document.

## **CONCLUSION**

For these reasons, Mr. Johnston respectfully request that the Court dismiss Counts 5, 6, 9, 10, 13, 14, 17, 19, 21, and 23 of the Indictment for improper venue.

Dated: November 6, 2024

Respectfully submitted,

*s/ Lawrence S. Lustberg*
Lawrence S. Lustberg
Anne M. Collart
Andrew J. Marino
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500
llustberg@gibbonslaw.com

*Attorneys for Defendant
Christopher Kyle Johnston*