

LAWRENCE S. LUSTBERG
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4731
llustberg@gibbonslaw.com

March 3, 2025

**VIA ECF**

Honorable Edward S. Kiel
United States District Judge
Mitchell H. Cohen Building
 & U.S. Courthouse
4th and Cooper Streets, Court Room 3A
Camden, New Jersey 08101

Re: *United States v. Johnston, et al.*, 20-cr-800 (ESK)

Dear Judge Kiel:

Please accept this letter brief in lieu of a more formal motion on behalf of Defendant Kyle Johnston to strike certain testimony elicited on direct examination of Tony Serna as improper hearsay.

Federal Rule of Evidence 801(d)(2)(E) provides that a statement is not hearsay if it is offered against an opposing party and "was made by th[at] party's co-conspirator during and in furtherance of the conspiracy." To admit a statement as the non-hearsay statement of a co-conspirator, the Government must demonstrate by a preponderance of the evidence—and therefore the Court must itself find by a preponderance of the evidence—that: (1) a conspiracy existed when the statement was made; (2) both the declarant and the defendant against whom the statement is offered were members of that conspiracy; and (3) the statement was made during the course of, and in furtherance of, the conspiracy. *Bourjaily v. United States*, 483 U.S. 171, 175-65 (1987); *United States v. Turner*, 718 F.3d 226, 231 (3d Cir. 2013); *United States v. Bobb*, 471 F.3d 491, 498-99 (3d Cir. 2006).

During the course of Mr. Serna's testimony, numerous statements that would otherwise have been hearsay were admitted as non-hearsay co-conspirator statements. Specifically,

- Mr. Serna testified that he spoke with two gentlemen from Central Rexall named Richard and Robert who "were interested in [my] veteran organization" (Military Medical Relief 21, or "MMR21") and its members. Tr. at 1073:10-19; 1248:22-1252:17;

- He testified that he met with Dr. Simmons and Nurse Practitioner Wagner, with whom he discussed Central Rexall, compounded medication, and a supposed

GIBBONS P.C.

March 3, 2025
Page 2

> scheme to pay MMR21's members for the receipt of compounded medications. Tr. at 1108:22-1112:4;
>
> - He testified about a similar conversation with Dr. Elder-Quintana, who supposedly told Mr. Serna that he had spoken with Dr. Simmons. Tr. at 1113:6-1116:7;
>
> - And he testified as to numerous statements that were made by his late sister Lucy Serna, who supposedly told Mr. Serna details about a fictitious pain study, her corrupt payments to doctors in exchange for patient evaluations, and those doctors' remarkably rapid telephone evaluations of patients, which would sometimes last as briefly as four seconds. Tr. at 1127:5-1131:4; 1136:1-1137:11.

Mr. Johnston objected to this testimony during Mr. Serna's direct examination. In response, the Government presented a proffer of the evidence it thought supported the hearsay exception: Mr. Serna discussed a "list of doctors" with the Defendants, "[got] the list of doctors" through "a call to his sister Lucy," and "[went] out and [saw] the doctors." The Government also cited "the statements of the doctors who will say that they are familiar with Central Rexall." The Court admitted the statements, after acknowledging that the Government was "asking [the Court] to make a leap" through "circumstantial evidence" but concluding that the Government had established by a preponderance of the evidence that the statements satisfied the requirements of Rule 801(d)(2)(E). Tr. at 1092-1108.

Since that ruling, it is now obvious that much of Mr. Serna's testimony was fabricated, or at the very least was not sufficiently credible to lay the foundation for the use of the co-conspirator exception here. He was confronted with, and was completely unable to explain, multiple forged documents in a supplemental production he made in response to a grand jury subpoena—a production he made after he had already made an initial production that he represented to be substantially complete, but that he made mere weeks after his first meeting with the prosecutors, by driving several hours to look for documents in his sister Lucy's garage. Tr. at 1293-1326. The absurdity of his account (as well as his shameless attempt to blame his sister for his misdeeds) speaks for itself. Meanwhile, Mr. Serna also lied about whether Central Rexall "set him up" with Dr. Elder-Quintana and Nurse Practitioner Wagner; in fact, neither prescriber *ever* sent Central Rexall a prescription until after Mr. Serna met with them. And Mr. Serna consistently lied about more obvious matters, including his dramatic false testimony that he did not meet with the Government to prepare for his testimony in this case, which he eventually reversed on his second re-direct examination, at which point he suddenly remembered when he met as well as the substance of what he discussed with the prosecutors at those meetings; likewise with regard to whether he was ever a Gunnery Sergeant in the Marines, and whether he hoped that his cooperation would result in a reduced sentence. Tr. at 1179-80; 1269-71; 1403-07; 1408-17. At the end of the day, Mr. Serna's credibility is nonexistent; certainly it cannot alone justify the receipt of evidence, the foundation for which is based entirely on his testimony.

GIBBONS P.C.

March 3, 2025
Page 3

      Indeed, the idea that the Government could demonstrate any fact by a preponderance of the evidence based on Mr. Serna's testimony—and the idea that the Court could conclude that something more likely than not occurred based on his statements—is troubling, at the very least.[1] And now that the Government has rested, we know that no other witnesses in this case testified about these supposed co-conspirators. No one mentioned Lucy Serna. No one testified that Dr. Elder-Quintana, Dr. Simmons, or Nurse Practitioner Wagner were familiar with Central Rexall before Mr. Serna began working with the pharmacy. And no one mentioned Central Rexall employees named Richard or Robert. No one other than Mr. Serna, therefore, provided evidence that any of the speakers were in the alleged conspiracy at the time that the statements were made.

      Accordingly, Mr. Johnston moves to strike those portions of Mr. Serna's testimony (described above) that could only be admissible under Rule 801(d)(2)(E). Striking the testimony is a permissible remedy under the Rules of Evidence. *See United States v. Burgos*, 239 F.3d 72, 74 (1st Cir. 2001) ("The party at whom the evidence is aimed must object to the statement when it is offered; and, if the district court accepts the evidence . . ., must then ask the court at the close of all the relevant evidence to strike the statement, i.e., to consider whether the proponent fulfilled the requisite foundational requirements by a preponderance of the evidence."); *United States v. Greene*, 995 F.2d 793, 800 (8th Cir. 1993) (affirming district court's decision to strike eleven conditionally admitted statements as improperly admitted hearsay statements); *United States v. Kaden*, 819 F.2d 813, 819 (7th Cir. 1987) (conditionally admitted hearsay statements may be "subject to a motion to strike if the government fail[s] to sufficiently prove those facts stated in their offer of proof"). Mr. Johnston respectfully suggests that this approach is correct here, and that at the close of the case, the jury should be instructed that it should not consider any statements from Dr. Elder-Quintana, Dr. Simmons, Nurse Practitioner Wagner, Lucy Serna, Richard (last name unknown), and Robert (last name unknown), as relayed through Mr. Serna's testimony.

      We thank the Court for its kind consideration of this matter.

      Respectfully submitted,

      s/ Lawrence S. Lustberg
      Lawrence S. Lustberg

cc:    All counsel of record

---

[1] So the Court is aware, Mr. Serna's sentencing submission in his prosecution in the Northern District of Texas was originally due February 20, 2025, with his sentencing on February 27. Both dates have been adjourned a month, possibly due to his apparent perjury in this case. 3:20-cr-00170-M (N.D. Tx.), ECF 76.