

**U.S. Department of Justice**
*United States Attorney*
*District of New Jersey*

| | | |
|---|---|---|
| *R. DAVID WALK, JR.*<br>*Assistant United States Attorney* | *970 Broad Street, 7th Floor*<br>*Newark, NJ  07102* | *(973) 645-2815* |

March 4, 2025

**VIA ECF**

Honorable Edward S. Kiel
United States District Judge
Mitchell H. Cohen Federal Building
  & United States Courthouse
Fourth and Cooper Streets
Camden, New Jersey 08102

  Re: <u>United States v. Christopher Kyle Johnston, et al., 20-cr-800</u>

Dear Judge Kiel:

  The United States respectfully submits this letter in response to defendant Christopher Kyle Johnston's request to strike *all* testimony by Tony Serna about statements made by Dr. Elder-Quintana, Dr. Simmons, Dr. Wagner, Lucy Serna, and Richard and Robert, including testimony that the defendants themselves elicited and testimony about statements that are not being admitted under Fed. R. Evid. 801(d)(2)(E).  This request should be denied.

  The defendant's motion should be considered in light of the bedrock principle of law that credibility matters are left to the jury and courts are not to usurp the jury's role in determining credibility when making evidentiary rulings.  *See, e.g., United States v. Bergrin*, 682 F.3d 261, 278–79 (3d Cir. 2012).  Defendant Johnston has cited some cases, mostly civil cases, in which courts have considered credibility when determining whether to admit co-conspirator statements under Rule 801(d)(2)(E).  The Tenth Circuit has held to the contrary.  It ruled that Rule 801(d)(2)(E) "does not require the district court to make a credibility determination before admitting the statement.  That is for the jury to decide." *United States v. Tipton*, 572 F. App'x 743, 747 n.2 (11th Cir. 2014).  *Id.*  That holding is consistent with the Third Circuit's admonition in *Bergrin* that district courts should not take evidence from the jury based on a credibility determination.

  But even if the Court were to consider Serna's credibility when deciding whether to strike portions of his testimony, the Court should not grant the relief defendant Johnston seeks.  Defendant Johnston primarily challenges the admission of testimony about statements made by Drs. Wagner, Elder-Quintana, and

1

Simmons, but independent evidence corroborates that they were part of the conspiracy:

- On December 4, 2014, three days after he met with Johnston and Trent Brockmeier, Serna sent an email to Brockmeier asking for a list of doctors. Government Exh. 284; Trial Tr. at 1089-90. Brockmeier never responded with an email saying that he did not know what Serna was talking about in requesting a list of doctors; instead, he forwarded Serna's email to Kyle Johnson saying only "yess." Johnston also did not question Serna's request for a list of doctors.
- Promptly after that email, Serna met with Drs. Simmons and Wagner and Dr. Elder-Quintana, according to his own testimony and the corroborating events that followed.
- On December 10, Serna sent an email to Johnston asking for Doctors Elder-Quintana of El Paso and Dr. Walter of Scottsdale (the first name of Simmons) to be added to his list of doctors. Government Exhibit 287. This email provided evidence that these doctors joined the conspiracy.
- On December 28, 2014, Serna sent an email to Johnston stating: "We finally have Doctors in the states where we are beginning. We should start sending big numbers in January . . . . ." Government Exh. 299.
- Nurse Practitioner Wagner (who worked under Dr. Simmons) and Dr. Elder-Quintana started sending huge numbers of prescriptions to Central Rexall. Dr. Wagner's first prescription was dated December 16, 2014. *See* Government Exh. 13 at 2. Dr. Elder-Quintana's first prescription was on December 31, 2014. Government Exh. 10 at 1. That these doctors started sending prescriptions at this time confirms that it was Serna who signed them up as part of the conspiracy.[1]
- The volume of these prescriptions in a short amount of time is consistent with the activities of the conspiracy and further confirms they were part of the conspiracy: Dr. Elder-Quintana signed 13 prescriptions on his very first day, December 31, 2014. Government Exh. 10 at 1-20. He sent 181 in the month of January 2015, 59 on a single day in February, and 262 in March 2015. Trial Tr. at 3495-96. The enormous volume of prescriptions written in about four months –several hundred prescriptions in a short time totaling over $9 million – is consistent with the pattern of the conspiracy and shows they were part of the conspiracy. See Government Exh 10, 13, 828A2, 829A2-835A2. And Central Rexall, at the direction of the defendants, paid Serna millions of dollars for these prescriptions.
- Patient calls to Central Rexall further corroborate that these doctors were part of the conspiracy. A patient called Central Rexall and said that Dr.

---

[1] Defendant Johnston claims that the fact that these doctors had not sent prescriptions before to Central Rexall before shows that Serna lied about receiving their names from Central Rexall. That does not logically follow. Central Rexall or one of its sales representatives could have had their names without them having written prior prescriptions. Indeed, Tom Isley of Supreme Medical requested to be paid an override commission on Serna's prescriptions, *see* Government Exhibit 329, which supports an inference that someone in Isley's group played a role in Serna coming to Central Rexall and providing the list of doctors.

Elder-Quintana had said that it was a trial and that they would receive their prescription at no charge. Government Exh. 308. Another patient of Dr. Elder-Quintana's reported that the only reason he agreed to get a prescription was to get paid. Government Exh. 353. And Hayley Taff told Brockmeier that patients were getting paid from Serna's group. Trial Tr. at 271.

This independent evidence shows clearly, and certainly by a preponderance of the evidence, that these doctors were part of the conspiracy. This evidence should be considered in conjunction with Serna's testimony, including his consistent statements from his first interview in December 2019, and his agreement in April 2020 to give evidence about the criminal activities of the two prescribers, Dr. Elder-Quintana and Nurse Practitioner Wagner. Government Exh. 1018A at 1. Moreover, conversations between Serna and the prescribers in their first meeting are admissible under 801(d)(2)(E) because "[e]very conspiracy must begin somewhere, and coconspirator statements made in furtherance of a conspiracy's creation are undoubtedly contemplated within the scope of Rule 801(d)(2)(E)." *United States v. Memoli*, 2014 WL 5313707, at *6 (D. Conn. Oct. 16, 2014). The Court should find that there is a preponderance of evidence to show that Drs. Simmons and Elder-Quintana and Nurse Practitioner Wagner were co-conspirators and reject the attempt to exclude their statements.

There is also independent evidence, smaller in volume but no less persuasive, of the participation of Lucy Serna. She is listed (as Lucy Gonzalez, *see* Trial Tr. at 1308) among Tony Serna's agents in his December 10, 2014 email to Central Rexall. Government Exh. 287. And, in an exhibit introduced by the defense, Def. Exh. 172, she signed on April 29, 2015 Central Rexall forms acknowledging that she received Central Rexall's code of conduct. She was clearly part of Serna's team who worked on Central Rexall matters, and that team conspired to commit health care fraud.

The Government acknowledges there is no independent evidence of the participation of Richard and Robert in the conspiracy. Serna's testimony about the statements themselves can be considered, and Serna had no reason to lie about this inconsequential detail.

The Governments submits that the evidence supports the admission of all co-conspirator statements about which Serna testified that were made by Drs. Simmons and Elder-Quintana, Nurse Practitioner Wagner, Lucy Serna, and Richard or Robert. But even if the Court were to conclude to the contrary as to any of these coconspirators, that conclusion does not support striking all of Serna's testimony about them. The *only* statements that could be struck under defendant Johnson's argument are statements that (a) the Government elicited and (b) were offered for their truth under Rule 801(d)(2)(E) and are not admissible under any other exception. The blanket instruction that defendant Johnston requests goes much, much too far, as it would tell the jury to disregard statements that were not admitted by the Government under this exception.

Defendant Johnston's proposed instruction also would exclude statements that the defense elicited, but a defendant cannot exclude testimony given in response to questions by defense counsel. *See, e.g., United States v. Maury*, 695 F.3d 227, 256–57 (3d Cir. 2012); *United States v. Frierson*, 611 F. App'x 82, 86 n.14 (3d Cir. 2015) (invited error doctrine bars a defendant from challenging testimony given in response to defense counsel's question). As the Third Circuit has explained:

> "[A] party introducing evidence cannot complain on appeal that the evidence was erroneously admitted." *Ohler v. United States*, 529 U.S. 753, 755 (2000). Such a circumstance may arise where the improper testimony is initially solicited by the party seeking to challenge the testimony (invited error), see *Trouser Corp. of Am. v. Goodman & Theise, Inc.*, 153 F.2d 284, 287–88 (3d Cir. 1946), or in rebuttal in response to the opposing party's own solicitation of improper testimony from that same witness (opening the door), *see United States v. Georgiou*, 777 F.3d 125, 144 (3d Cir. 2015). In either circumstance, the party who elicited the improper testimony cannot on appeal challenge its admissibility.

*United States v. Wheeler*, No. 16-3780, 2021 WL 4129731, at *5 (3d Cir. Sept. 10, 2021). And so defendant Johnston cannot have the Court strike any testimony other than the testimony elicited by the Government.

Defendant Johnston's choice to file this motion at the eleventh hour, three weeks after counsel first suggested this motion and right before the jury will be charged, has left the Court and the parties little time to sort through the transcripts and identify exactly which statements defendant Johnston contends are excludable. As the moving party, it is incumbent on defendant Johnston to identify the particular statements made by these co-conspirators that should be stricken. Those statements cannot include statements not admitted for their truth or admissible under grounds other than Rule 801(d)(2)(E), as there is no basis for striking those statements. *See, e.g.,* Trial Tr. 1110:11 (Dr. Simmons' statement that he was not happy). Defendants should not be rewarded for their delay with a blanket ruling far beyond what is permissible under the law.

The Government acknowledges that Serna testified falsely about one matter, which was promptly corrected, but it is up to the jury to determine the credibility of all of his testimony. The Court should not take that function from the jury.

Respectfully submitted,

*[signature]*

R. DAVID WALK, JR.
DANIEL A. FRIEDMAN
Assistant United States Attorneys

cc:   All counsel (via ECF)